1

2                    IN THE UNITED STATES DISTRICT COURT

3                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

4                            SAN JOSE DIVISION

5

      UNITED STATES OF AMERICA,        )   CR-19-0641-VKD
6                                       )
                          PLAINTIFF,    )   SAN JOSE, CALIFORNIA
7                                       )
                  VS.                   )   SEPTEMBER 21, 2020
8                                       )
      TORIBIO-AVINA,                    )   PAGES 1-39
9                                       )
                          DEFENDANT     )
10                                      )
      _____ )
11
                          TRANSCRIPT OF PROCEEDINGS
12             BEFORE THE HONORABLE VIRGINIA K. DEMARCHI
                      UNITED STATES MAGISTRATE JUDGE
13
                       A P P E A R A N C E S
14

15        FOR THE PLAINTIFF:      **BY:  MARISSA HARRIS**
                                  U.S. ATTORNEYS OFFICE
16                                NORTHERN DISTRICT CALIFORNIA
                                  150 ALMADEN BLVD., STE. 900
17                                SAN JOSE, CA 95113

18

19        FOR THE DEFENDANT:      **BY:  RUBEN TORRES MUNOZ**
                                  ATTORNEY AT LAW
20                                255 N. MARKET STREET, SUITE 265
                                  SAN JOSE, CA 95110
21

22        PROBATION:              **RAQUEL BUTLER**

23        OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR
                                       CERTIFICATE NUMBER 13185
24

25             PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                  TRANSCRIPT PRODUCED WITH COMPUTER

```
 1            SAN JOSE, CALIFORNIA              SEPTEMBER 21, 2020

 2                      P R O C E E D I N G S

 3       (COURT CONVENED AT 1:35 P.M.)

 4            THE COURT:  OKAY.  MS. CROMWELL, GO AHEAD AND CALL

 5       THE CASE, PLEASE.

 6            THE CLERK:  CALLING THE MATTER OF UNITED STATES V.

 7       MARIA TORIBIO-AVINA.  CASE NUMBER 19-CR-641.

 8            THE COURT:  MAY I HAVE THE PARTY'S APPEARANCES,

 9       PLEASE, STARTING WITH THE UNITED STATES.

10            MS. HARRIS:  GOOD AFTERNOON YOUR HONOR.

11       MARISSA HARRIS FOR THE UNITED STATES.

12            THE COURT:  I COULDN'T HEAR MS. HARRIS.

13       MS. HARRIS, DO YOU HAVE ENGLISH SELECTED?

14            MS. HARRIS:  OH.  CAN YOU HEAR ME NOW?

15            THE COURT:  YES.  TRY IT ONE MORE TIME.  CAN YOU SAY

16       SOMETHING NOW?

17            MS. HARRIS:  YES.  GOOD AFTERNOON, YOUR HONOR.

18       MARISSA HARRIS --

19            THE COURT:  IF I UNMUTE ORIGINAL AUDIO, I CAN HEAR

20       YOU.

21       OKAY.  EVERYONE WHO IS SPEAKING ENGLISH SHOULD BE ON THE

22       ENGLISH CHANNEL, AND EVERYONE WHO IS COMMUNICATING IN SPANISH

23       SHOULD BE ON THE SPANISH CHANNEL.

24       JUST TRY ONE MORE TIME, MS. HARRIS.

25            MS. HARRIS:  CAN YOU HEAR ME NOW, YOUR HONOR?
```

1          THE COURT:  I CAN HEAR YOU.  LET ME SEE IF I MUTE

2    ORIGINAL AUDIO, LET ME SEE IF I CAN HEAR YOU.

3          MS. HARRIS:  CAN YOU MORE ME NOW?

4          THE COURT:  YES.

5       ALL RIGHT.  PLEASE GO AHEAD, MR. MUNOZ.

6          MR. MUNOZ:  GOOD AFTERNOON, YOUR HONOR.

7       RUBEN MUNOZ ON BEHALF OF --

8          THE COURT:  MR. MUNOZ, I CAN'T HEAR YOU.  HAVE YOU

9    SELECTED ENGLISH, MR. MUNOZ?

10          MR. MUNOZ:  UMM --

11          THE CLERK:  JUDGE, YOU NEED TO UNMUTE ORIGINAL AUDIO.

12          THE COURT:  IF I UNMUTE ORIGINAL AUDIO, THEN I'M

13    SUPPOSED TO BE ON MUTE AND I CAN HEAR EVERYBODY'S AUDIO ON BOTH

14    CHANNELS, IS THAT THE IDEA?

15          THE CLERK:  YOU ARE ONLY SUPPOSED TO HEAR THE ENGLISH

16    VERSION.

17          THE COURT:  OKAY.  LET'S JUST GO AHEAD.

18       GO AHEAD, MR. MUNOZ.

19          MR. MUNOZ:  GOOD AFTERNOON, YOUR HONOR.

20       RUBEN MUNOZ ON BEHALF OF MS. MARIA TORIBIO-AVINA WHO IS

21    APPEARING BY ZOOM AND SHE AGREES TO THIS APPEARANCE.

22          THE COURT:  OKAY.  GOOD AFTERNOON.  GOOD AFTERNOON.

23       MS. TORIBIO-AVINA, CAN YOU HEAR THE COURT?

24          THE DEFENDANT:  YES.

25          THE COURT:  OKAY.  I UNDERSTAND THAT MS.

1    TORIBIO-AVINA WAIVES HER RIGHT TO AN IN-PERSON APPEARANCE AND

2    CONSENTS TO VIDEO CONFERENCE.

3        AND FROM PROBATION?

4            PROBATION OFFICER:  HELLO, RAQUEL BUTLER FROM

5    PROBATION.

6            THE COURT:  GOOD AFTERNOON TO YOU AS WELL.

7        AND MS. TORIBIO-AVINA IS BEING ASSISTED BY THE SPANISH

8    LANGUAGE INTERPRETER, LUPITA ARCE.

9        SO THE PURPOSE OF TODAY'S PROCEEDING IS FOR SENTENCING.

10   MS. TORIBIO-AVINA HAS PLED GUILTY TO COUNT 1, VIOLATION OF 18

11   USC SECTION 1028(A)(4), POSSESSION OF IDENTIFICATION DOCUMENTS

12   WITH INTENT TO DEFRAUD.  AND TODAY IS WHEN I WILL HEAR ARGUMENT

13   ABOUT SENTENCING.

14       THE COURT HAS RECEIVED THE FOLLOWING DOCUMENTS:  I HAVE

15   RECEIVED THE PRESENTENCE REPORT AND ADDENDUM FROM PROBATION.  I

16   HAVE A COPY OF THE PLEA AGREEMENT.  I HAVE THE UNITED STATES

17   SENTENCING MEMORANDUM AND THE DEFENDANT'S SENTENCING

18   MEMORANDUM.  AND IN ADDITION, I RECEIVED THREE LETTERS OF

19   RECOMMENDATION FROM PEOPLE FOR WHOM MS. TORIBIO HAS PERFORMED

20   HOUSEKEEPING SERVICES ATTESTING TO THE QUALITY OF HER WORK, HER

21   TRUSTWORTHINESS, RELIABILITY AND INTEGRITY.

22       DOES EITHER PARTY HAVE ANYTHING ELSE FOR THE COURT?

23           MS. HARRIS:  YOUR HONOR, JUST ONE MORE THING.

24       I WOULD ASK THAT THE COURT MAKE A FINDING UNDER THE CARES

25   ACT REGARDING THE SENTENCING HEARING CONDUCTED BY VIDEO

1    CONFERENCE TODAY.

2              THE COURT:  I WILL MAKE THAT EXPLICIT.

3         BECAUSE OF THE PUBLIC HEALTH EMERGENCY, THE COURT FINDS

4    THAT IN-PERSON PROCEEDINGS ARE NOT POSSIBLE TO CONDUCT AT THIS

5    TIME, AND PROCEEDINGS ARE ONLY AVAILABLE BY VIDEO CONFERENCE.

6         I UNDERSTAND THAT MS. TORIBIO-AVINA HAS WAIVED HER RIGHT

7    TO A PERSONAL APPEARANCE AND CONSENTS TO APPEAR BY VIDEO

8    CONFERENCE.  IS THAT THE CASE, MS. TORIBIO-AVINA?

9              THE DEFENDANT:  YES, THAT'S RIGHT.

10             THE COURT:  ALL RIGHT.  ANYTHING ELSE FROM COUNSEL IN

11    TERMS OF DOCUMENTS TO BE SUBMITTED TO THE COURT?

12             MR. MUNOZ:  NOT FROM US, YOUR HONOR.

13             MS. HARRIS:  NO.

14             THE COURT:  OKAY.

15        ALL RIGHT.  MS. HARRIS, HAS THE VICTIM BEEN NOTIFIED OF

16    HER RIGHT TO ATTEND AND BE HEARD?

17             MS. HARRIS:  YES, YOUR HONOR, THROUGH VICTIM SERVICES

18    AND ALSO THROUGH VNS.  MY UNDERSTANDING IS THAT SHE HAS NOT YET

19    SUBMITTED ANY VICTIM IMPACT STATEMENT, AND WE ARE UNAWARE OF

20    HER INTENT TO DO SO.

21             THE COURT:  OKAY.  AND IT DOES NOT APPEAR THAT SHE IS

22    IN ATTENDANCE AT THIS HEARING; IS THAT YOUR UNDERSTANDING?

23             MS. HARRIS:  YES, YOUR HONOR.

24             THE COURT:  MR. MUNOZ, HAVE YOU AND YOUR CLIENT READ

25    AND DISCUSSED THE PRESENTENCE REPORT?

1          MR. MUNOZ:  YES, YOUR HONOR.

2          THE COURT:  THE PRESENTENCE REPORT INDICATES THAT

3     NEITHER PARTY HAS ANY OBJECTIONS THAT HAVE NOT BEEN RESOLVED.

4     I HAVE REVIEWED THE REPORT AND I DO ADOPT ITS FINDINGS.

5          WITH RESPECT TO THE CALCULATION OF THE GUIDELINE, THE

6     ADVISORY GUIDELINE RANGE, I CALCULATE THE FOLLOWING GUIDELINES:

7          MS. TORIBIO-AVINA'S OFFENSE LEVEL IS 10.  SHE HAS NO

8     CRIMINAL HISTORY, THEREFORE HER CRIMINAL HISTORY SCORE IS 0,

9     AND HER CRIMINAL HISTORY CATEGORY IS 1.  THIS PRODUCES A

10    GUIDELINE RANGE OF 6 TO 12 MONTHS IMPRISONMENT.  HOWEVER, THE

11    MINIMUM TERM OF THAT IMPRISONMENT GUIDELINE MAY BE SATISFIED IN

12    THE ALTERNATIVE BY EITHER A SENTENCE OF IMPRISONMENT THAT

13    INCLUDES A TERM OF SUPERVISED RELEASE WITH A CONDITION THAT

14    SUBSTITUTES COMMUNITY CONFINEMENT, OR HOME DETENTION, PROVIDED

15    THAT AT LEAST ONE MONTH IS SATISFIED BY IMPRISONMENT, OR BY A

16    SENTENCE OF PROBATION THAT INCLUDES A CONDITION, OR A

17    NOMINATION OF CONDITIONS OF SUBSTITUTE INTERMITTENT

18    CONFINEMENT, COMMUNITY CONFINEMENT, OR HOME DETENTION FOR

19    IMPRISONMENT, ACCORDING TO THE SCHEDULE AS SET FORTH IN THIS

20    SENTENCING GUIDELINES.  THAT'S SECTION 5(C)1.1(E).

21         THE GUIDELINE RANGE FOR SUPERVISED RELEASE FOLLOWING

22    IMPRISONMENT IS ONE YEAR.  A MONETARY FINE IN THE RANGE OF

23    $4,000 TO $40,000; MANDATORY SPECIAL ASSESSMENT IS $25.  THE

24    GUIDELINE FOR RESTITUTION IS RESTITUTION IN THE FULL AMOUNT OF

25    THE VICTIM'S FINANCIAL LOSS, IF ANY, AND FORFEITURE OF PROPERTY

1  USED IN THE COMMISSION OF THE OFFENSE OR DERIVED FROM THE

2  OFFENSE.

3          ARE THERE ANY OBJECTIONS TO THE COURT'S ASSESSMENT OF THE

4  APPLICABLE GUIDELINE RANGES, MS. HARRIS?

5              MS. HARRIS:  NO, YOUR HONOR.

6              THE COURT:  MR. MUNOZ?

7              MR. MUNOZ:  NO, YOUR HONOR.

8              THE COURT:  CONSIDERING THE QUESTION OF DEPARTURES,

9  NEITHER PARTY HAS MOVED FOR A DEPARTURE, EITHER UPWARD OR

10  DOWNWARD, AND THE COURT IS AWARE OF NO FACTORS THAT WOULD

11  WARRANT DEPARTURE FROM THE SENTENCING GUIDELINES, SO I DO NOT

12  INTEND TO DEPART.

13          CONSIDERING SECTION 3553(A) VARIANCES, AFTER CALCULATING

14  THE GUIDELINES AND CONSIDERING DEPARTURES, I WILL CONSIDER THE

15  RELEVANT FACTORS SET OUT IN SECTION 18 USC SECTION 3553(A), TO

16  ENSURE THAT I IMPOSE A SENTENCE THAT IS SUFFICIENT, BUT NOT

17  GREATER THAN NECESSARY TO COMPLY WITH THE PURPOSES OF THE

18  SENTENCING STATUTE.

19          AND THESE PURPOSES INCLUDE THE NEED FOR THE SENTENCE TO

20  REFLECT THE SERIOUSNESS OF MS. TORIBIO-AVINA'S CRIME, TO

21  PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT FOR

22  THE OFFENSE AS WELL.  THE SENTENCE IS INTENDED TO DETER

23  CRIMINAL CONDUCT AND TO PROTECT THE PUBLIC FROM FUTURE CRIME BY

24  THIS DEFENDANT AND TO PROMOTE REHABILITATION.

25          IN ADDITION TO THE GUIDELINES AND POLICY STATEMENTS IN THE

1    GUIDELINES, I MUST CONSIDER THE NATURE AND CIRCUMSTANCES OF THE

2    OFFENSE, THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT, THE

3    NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES AMONG

4    SIMILARLY SITUATED DEFENDANTS, AND THE TYPES SENTENCES THAT ARE

5    AVAILABLE.

6         MS. HARRIS, DOES THE GOVERNMENT WISH TO ARGUE ABOUT THE

7    APPLICATION OF THE SECTION 3553(A) FACTORS OR OTHERWISE MAKE A

8    SENTENCING RECOMMENDATION?

9              MS. HARRIS:  YES, YOUR HONOR.

10        THE GOVERNMENT'S SENTENCING RECOMMENDATION IS THAT THE

11   DEFENDANT -- AS WE SAID IN OUR MEMO, THE SENTENCE FALLS WITHIN

12   ZONE B OF THE SENTENCING TABLE.  SO THE COURT IS NOT REQUIRED

13   TO IMPOSE A SENTENCE OF IMPRISONMENT.

14        AND IN OUR MEMO, WE INDICATED THAT THE COURT NOT IMPOSE A

15   SENTENCE OF IMPRISONMENT, BUT RATHER THE COURT IMPOSE A

16   SENTENCE OF PROBATION, SPECIFICALLY THREE YEARS PROBATION, SIX

17   MONTHS HOME CONFINEMENT, 50 HOURS OF COMMUNITY SERVICE, THE $25

18   MANDATORY SPECIAL ASSESSMENT FEE, AND FORFEITURE.

19             THE INTERPRETER:  I'M SORRY, MS. HARRIS, COULD YOU

20    REPEAT IT A LITTLE BIT SLOWER?

21             MS. HARRIS:  YES, I'M SORRY.

22        THE GOVERNMENT'S RECOMMENDED SENTENCE IS THREE YEARS OF

23   PROBATION, SIX MONTHS OF HOME CONFINEMENT, 50 HOURS OF

24   COMMUNITY SERVICE, A $25 SPECIAL ASSESSMENT FEE, WHICH IS

25   MANDATORY, AND FORFEITURE AS DIRECTED AND MS. TORIBIO-AVINA'S

1    PLEA AGREEMENT.

2         SO AS WE ARGUED IN OUR MEMO, THE OFFENSE CONDUCT IN THIS

3    CASE IS QUITE STRAIGHTFORWARD.  BUT IT IS SERIOUS, AND EVEN

4    THOUGH WE HAVE REACHED AN AGREEMENT WHERE MS. TORIBIO-AVINA

5    PLED TO A MISDEMEANOR OFFENSE, THE CONDUCT IN THIS CASE DOES

6    CONSTITUTE SEVERAL FELONIES, IN FACT.

7         OUR DECISION TO ALLOW THIS DISPOSITION WAS INFORMED BY

8    SEVERAL FACTORS, INCLUDING THE FACT THAT MS. TORIBIO-AVINA DOES

9    NOT HAVE ANY CRIMINAL HISTORY, EITHER AS HERSELF AND UNDER HER

10   TRUE NAME, OR UNDER THE ASSUMED NAME THAT SHE HAS BEEN USING

11   FOR THE PAST TEN YEARS.

12        HOWEVER, AS WE NOTED, MS. TORIBIO-AVINA ASSUMED THIS

13   IDENTITY BECAUSE SHE WOULD NOT BE ABLE TO CLAIM IT UNDER NORMAL

14   CIRCUMSTANCES BASED ON HER NON-CITIZENSHIP.  AGAIN, THE USE AND

15   APPLICATION AND GRANTING OF PASSPORTS IS A PRIVILEGE RESERVED

16   FOR U.S. CITIZENS, AND THE IMPORTANT DISTINGUISHING FACTOR IN

17   THIS CASE IS THAT SHE TOOK THE IDENTITY OF A LIVING U.S.

18   CITIZEN AND USED IT TO GET BENEFITS THAT SHE ORDINARILY WOULD

19   NOT HAVE HAD ACCESS TO.

20        THERE IS EVIDENCE IN THIS CASE THAT HER DECISION TO DO

21   THAT NEGATIVELY IMPACTED THE VICTIM.  WE IDENTIFIED, AND THE

22   VICTIM HERSELF IDENTIFIED A SITUATION WHERE SHE WAS DENIED

23   UNEMPLOYMENT BENEFITS, SHE HAD APPLIED FOR THEM AND THEN

24   DISCOVERED THAT THERE WERE SEVERAL FRAUDULENT ACCOUNTS THAT HAD

25   BEEN OPENED IN HER NAME.

1    AND AGAIN, WHILE SHE HASN'T SUBMITTED ANY VICTIM IMPACT

2    STATEMENTS OR REQUEST FOR RESTITUTION, IT'S IMPORTANT FOR THE

3    COURT TO KNOW THAT EVEN THE FACT OF THE FRAUD IS AN ADVERSE

4    EFFECT ON HER.  THERE ARE CONSEQUENCES TO HAVING FRAUD

5    ASSOCIATED WITH YOUR NAME, WITH YOUR SOCIAL SECURITY NUMBER,

6    WITH YOUR CREDIT -- SOCIAL SECURITY NUMBER, WITH YOUR CREDIT

7    HISTORY; AND IN FACT, THEY ARE CONSEQUENCES THAT ARE VERY

8    DIFFICULT TO RESOLVE.

9    AS THE COURT IS ALSO AWARE, THE VICTIM IN THIS CASE, WE

10   WERE ABLE TO ESTABLISH HER TRUE IDENTITY BECAUSE SHE WAS A

11   PRISONER, THE COURT IS AWARE THAT THAT PRISONER -- THAT

12   PRISONERS IN PARTICULAR FACE EXTRAORDINARY CHALLENGES TRYING TO

13   REENTER SOCIETY.  AND TO HAVE, ON TOP OF THAT, A STOLEN

14   IDENTITY THAT'S BEEN FRAUDULENTLY USED BY ANOTHER PERSON TO RUN

15   UP CREDIT AND HISTORY THAT DOESN'T BELONG TO YOU AND THAT YOU

16   ARE GOING TO HAVE TO TAKE EXTRA TIME TO RESOLVE, IS JUST

17   ANOTHER FACTOR PILING ON TO ALL OF THE OTHER ISSUES THAT THEY

18   HAVE TO NAVIGATE, BEING RECENTLY RELEASED INDIVIDUALS, IN ORDER

19   TO SUCCEED IN SOCIETY AFTER THEY HAVE HAD THAT SETBACK.

20   SO THIS IS OUTSIDE OF THE SCOPE OF TYPICAL -- I'M NOT

21   GOING TO SAY ALL OF THEM ARE THE SAME, BUT THE ONLY PRIOR CASE

22   THAT I HAVE HAD, THE VICTIM WAS A DEAD PERSON WHO DIDN'T HAVE

23   TO FACE ANY OF THESE CHALLENGES, WHO DIDN'T HAVE TO REBUILD A

24   CREDIT HISTORY, OR CRIMINAL HISTORY, OR ANY OTHER TYPE OF

25   HISTORY AFTER THE DISCOVERY OF A FRAUDULENT IDENTITY.  AND THAT

1    REALLY MADE THE DIFFERENCE HERE.

2         SO THE GOVERNMENT'S RECOMMENDED SENTENCE TAKES ALL OF

3    THESE THINGS INTO ACCOUNT; IN PARTICULAR, THE IMPACT ON THE

4    VICTIM IN TERMS OF REESTABLISHING HER IDENTITY, AND THE FACT

5    THAT MS. TORIBIO-AVINA USED THIS IDENTITY FOR TEN YEARS.

6         I MEAN, AGAIN THAT'S A VERY LONG TIME TO BE MOONLIGHTING

7    AS A PERSON WHO ISN'T YOU, USE THIS PASSPORT THAT SHE

8    FRAUDULENTLY OBTAINED TO TRAVEL ACROSS THE BORDER TO MEXICO

9    SEVERAL TIMES.  I MEAN, IT JUST -- AGAIN, THE OFFENSE CONDUCT

10   IN THIS CASE CONSTITUTES SEVERAL DIFFERENT DISCREET OFFENSES,

11   IF YOU BREAK THEM DOWN.  AND THE GOVERNMENT SHOWED PRETTY

12   EXTRAORDINARY LENIENCY TO THIS DEFENDANT AND TO HER SISTER, IN

13   CHOOSING TO RESOLVE THINGS IN THIS MANNER OR TO NOT SUBJECT HER

14   POTENTIALLY TO A PRISON SENTENCE OR A FELONY CONVICTION.

15        SO WE THINK THAT WHAT WE HAVE RECOMMENDED IS FAIR.  IT'S,

16   AGAIN, THE BOTTOM OF THE GUIDELINES, ESSENTIALLY, IT'S A TERM

17   OF PROBATION WHICH INCLUDES A PERIOD OF HOME CONFINEMENT, SIX

18   MONTHS.

19        WE BELIEVE THAT THE HOME CONFINEMENT, THE COMMUNITY

20   SERVICE ARE RELEVANT TO THE SENTENCE IN TERMS OF DETERRENCE

21   FROM THE ACTIVITY; BUT MOST IMPORTANTLY, TO THE EXTENT THAT SHE

22   HAS ONGOING ISSUES TO RESOLVE, INCLUDING DETANGLING HER

23   IDENTITY FROM THE IDENTITY THAT SHE HAS STOLEN FROM ANY

24   FRAUDULENT ACCOUNTS OR CREDIT OR ANY OTHER ASPECT OF THE

25   VICTIM'S IDENTITY THAT SHE'S ASSUMED, THIS WILL ALLOW HER TO DO

1    THAT AS EXPEDITIOUSLY AS POSSIBLE SO THAT THE VICTIM CAN MAKE

2    EVERY EFFORT TO MOVE ON WITH HER LIFE.

3         WE THINK THIS IS A FAIR RECOMMENDATION, AND WE HOPE THAT

4    THE COURT CONSIDERS ALL OF THESE FACTORS AS IT IMPOSES A

5    SENTENCE.  AND WITH THAT, WE WILL SUBMIT.

6         THE COURT:  ALL RIGHT.  THANK YOU, MS. HARRIS.

7    I DO HAVE A COUPLE OF QUESTIONS.

8         DOES THE EVIDENCE THE UNITED STATES HAVE -- WELL, MAY I

9    PUT IT THIS WAY, THERE'S SUGGESTION IN THE PAPERS THAT THE

10   VICTIM POSSIBLY SUFFERED A DENIAL OF UNEMPLOYMENT BENEFITS

11   BASED ON THE DISCOVERY THAT HER IDENTITY WAS BEING USED TO OPEN

12   THESE ACCOUNTS.  IS THAT, AT THIS POINT, SPECULATION, OR DOES

13   THE UNITED STATES HAVE EVIDENCE THAT IN FACT SHE WAS DENIED

14   UNEMPLOYMENT BENEFITS ON THAT BASIS?

15        MS. HARRIS:  THANK YOU.

16        YOUR HONOR, THE EVIDENCE IS THE VICTIM'S STATEMENT THAT

17   SHE WAS DENIED UNEMPLOYMENT BENEFITS, AND SHE DID NOT KNOW

18   WHETHER OR NOT THAT WAS BECAUSE OF THE FRAUDULENT IDENTITY.

19        HOWEVER -- EXCUSE ME, THE IDENTITY THEFT.  IT COULD HAVE

20   BEEN FOR ANOTHER REASON, IT COULD HAVE BEEN BECAUSE SHE MAY NOT

21   HAVE BEEN ELIGIBLE FOR THEM.  AGAIN, I'M NOT ENTIRELY CERTAIN

22   WHETHER THERE WAS SOME STATE PROHIBITION OR WHAT IT WAS, BUT

23   THIS IS THE VICTIM TELLING US HOW SHE WAS AFFECTED BY -- HOW

24   SHE WAS AFFECTED, AND THAT THERE MAY HAVE BEEN A CORRELATION

25   BETWEEN THE IDENTITY THEFT AND HER DENIAL OF BENEFITS.

```
 1          BUT AGAIN, ONE THING THAT SHE DID NOTE IS THAT THERE WERE
 2     A BUNCH OF FRAUDULENT ACCOUNTS THAT WERE OPENED IN HER NAME.
 3     AND TO THE EXTENT THAT THAT HAS ANY IMPACT ON HER, INCLUDING
 4     ALL OF THE HOURS THAT SHE'S GOING TO HAVE TO ENGAGE IN IN ORDER
 5     TO CLOSE THOSE FRAUDULENT ACCOUNTS TO DETANGLE HER CREDIT
 6     HISTORY FROM THAT WHICH HAS BEEN AMASSED BY MS. TORIBIO-AVINA
 7     USING HER NAME, THAT AGAIN IS A NEGATIVE IMPACT OF THIS FRAUD.
 8          THE COURT:  OKAY.  TWO OTHER QUESTIONS.
 9          IS IT A PROPOSED CONDITION OF PROBATION OR SUPERVISED
10     RELEASE, PROBATION IN THIS SITUATION, THAT MS. TORIBIO-AVINA
11     CLOSE ALL OF THE ACCOUNTS?
12          IN OTHER WORDS, IT'S NOT EXPECTED THAT THE VICTIM WILL
13     HAVE TO CLOSE THE ACCOUNTS, IT'S A REQUIREMENT OF THE
14     CONDITIONS THAT MS. TORIBIO-AVINA WILL DO SO.
15          MS. HARRIS:  THAT'S CORRECT, YOUR HONOR.
16          HOWEVER, THERE ARE CERTAIN THINGS THAT MS. TORIBIO-AVINA
17     CANNOT DO FOR THE VICTIM.  FOR EXAMPLE, SHE CANNOT CALL EQUIFAX
18     OR TRANSUNION TO REQUEST INFORMATION BE TAKEN OFF HER CREDIT
19     REPORT.  SHE CANNOT PUT A FRAUD ALERT ON AT ANY OF THE BANKS OR
20     AT ANY OF THE CREDIT REPORTING AGENCIES.
21          TO THE EXTENT THAT -- WHAT I'M SAYING, BASICALLY, IS THAT
22     SHE WILL NEED TO PROVE HER IDENTITY TO THESE ORGANIZATIONS WHO
23     ARE RESPONSIBLE FOR AMASSING HER CREDIT HISTORY.  AND GOING
24     FORWARD, SHE WILL HAVE TO DETANGLE HER HISTORY FROM THE HISTORY
25     THAT HAS BEEN AMASSED BY MS. TORIBIO-AVINA, ON HER OWN.
```

1    MS. TORIBIO-AVINA CAN'T DO THAT FOR HER.  SHE'S THE ONLY

2    ONE WHO WILL BE ABLE TO USE HER TRUE IDENTITY, SOCIAL SECURITY,

3    NUMBER DATE OF BIRTH, AND ANY STATE ISSUED IDENTIFICATION IN

4    ORDER TO PROVE HER IDENTITY.

5        AND TO THE EXTENT THERE ARE LINGERING PROBLEMS EVEN AFTER

6    THE CLOSURE OF THE ACCOUNTS, WITH THE CREDIT HISTORY THAT'S

7    BEEN AMASSED, THE FRAUDULENT HISTORY, SHE WILL HAVE TO RESOLVE

8    IT HERSELF.

9        THE COURT:  THANK YOU.

10    MY LAST QUESTION IS WITH RESPECT TO CREDIT, CREDIT

11    HISTORY, CREDIT WORTHINESS.  IS THERE EVIDENCE THAT THE

12    UNITED STATES HAS THAT MS. TORIBIO-AVINA'S CONDUCT WHILE USING

13    THIS IDENTITY HAS ACTUALLY CREATED NEGATIVE CREDIT EVENTS, IN

14    THE SENSE THAT SHE'S RUINED THE OTHERWISE CREDIT HISTORY THAT

15    THE OTHER VICTIM HAD, OR CAUSED SOME ADVERSE EVENTS TO BE

16    RECORDED?

17        MS. HARRIS:  NO, YOUR HONOR.

18    OUR EVIDENCE THUS FAR IS THERE WERE FRAUDULENT ACCOUNTS

19    OPENED IN THE VICTIM'S NAME.  TO THE EXTENT THAT THE EXISTENCE

20    OF THESE ACCOUNTS, THAT IS AGAIN THE PRIMARY BASIS FOR OUR

21    ARGUMENT, AND THE ABSENCE OF ANY STATEMENT FROM THE VICTIM

22    CONFIRMING THAT SHE HAS SUFFERED AN ACTUAL LOSS OF HER ASSETS.

23    WE HAVEN'T RUN A CREDIT REPORT ON THE DEFENDANT OR ON THE

24    VICTIM'S NAME TO IDENTIFY SPECIFIC INSTANCES, OTHER THAN THOSE

25    IDENTIFIED BY THE VICTIM IN THE ESTABLISHMENT OF FRAUDULENT

1    ACCOUNTS, YOUR HONOR.

2         THE COURT:  OKAY.  THANK YOU.

3         ALL RIGHT.  MR. MUNOZ, DOES THE DEFENDANT WISH TO ARGUE

4    ABOUT THE APPLICATION WAS 3553 FACTORS AND MAKE A SENTENCING

5    RECOMMENDATION?

6         MR. MUNOZ:  VERY BRIEFLY, YOUR HONOR.

7         WE ARE ASKING THE COURT TO FOLLOW PROBATION'S

8    RECOMMENDATION.

9         WE UNDERSTAND THIS WAS A SERIOUS CRIME THAT

10   MS. TORIBIO-AVINA COMMITTED.  SHE UNDERSTANDS THAT.  BUT I

11   THINK IT'S ALSO IMPORTANT TO NOTE THAT BEHIND THIS MOTIVATION,

12   WHICH WAS WRONG TO DO, WAS HER MOTIVATION TO BE ABLE TO STAY IN

13   THIS COUNTRY, AND PERHAPS WORK.

14        AND AGAIN, THAT LOGIC WAS FLAWED, OBVIOUSLY, BECAUSE SHE

15   COMMITTED A CRIME, BUT THAT SORT OF WAS THE UNDERLYING

16   MOTIVATION.

17        AND I THINK IT'S IMPORTANT TO NOTE THAT SHE DIDN'T USE IT

18   TO COMMIT OTHER CRIMES, OR BEYOND USING THIS AND USING THIS

19   IDENTIFICATION, SHE DID USE IT TO BE HERE.  SHE DID OPEN

20   ACCOUNTS AND OTHER THINGS, AND I HEAR FROM THE GOVERNMENT THAT

21   THOSE ACTIONS DO AFFECT THE VICTIM BECAUSE SHE'S GOT TO DEAL

22   WITH IT SOMEHOW AND FIX HER HISTORY.

23        BUT WE THINK THAT AGAIN, MS. TORIBIO-AVINA HAS

24   DEMONSTRATED HER LAW ABIDING -- OTHERWISE LAW ABIDING LIFE.

25   SHE'S WORKED FOR A LONG TIME AS A HOUSE CLEANER, SHE HAS BUILT

1    AND RAISED A FAMILY.  SHE HAS THREE SMALL CHILDREN, AND WE

2    BELIEVE THAT A RECOMMENDATION OF PROBATION IS PROPER.  EVEN

3    THOUGH HOME CONFINEMENT, AS RECOMMENDED BY THE GOVERNMENT, IT'S

4    OBVIOUSLY BETTER THAN THE RECOMMENDATION OF PRISON, WE WOULD

5    STILL ASK THE COURT NOT IMPOSE THAT.

6         SHE WOULD HAVE OTHERWISE MORE FREEDOM TO -- SHE'S A

7    HOMEMAKER NOW DURING THESE COVID TIMES.  HER PARTNER WORKS AND

8    SHE STAYS HOME WITH THE THREE CHILDREN, AND SHE HAS TO DO

9    ERRANDS TO OBVIOUSLY HELP THE CHILDREN AND BE THE HOMEMAKER

10   THAT SHE IS.  SO WE WOULD ASK THAT THE COURT FOLLOW PROBATION'S

11   RECOMMENDATION.

12        AND I DO THINK THAT COMMUNITY SERVICE HOURS WOULD BE

13   APPROPRIATE.

14             THE COURT:  THANK YOU.

15        SO THE COURT IS CONSIDERING A VARIANCE WITH RESPECT TO THE

16   PROPOSED TERM OF PROBATION FOR THREE YEARS WITHOUT

17   IMPRISONMENT, AND WITHOUT ANY HOME DETENTION OR COMMUNITY

18   CONFINEMENT OR INTERMITTENT CONFINEMENT.

19        AND MY REASONS FOR CONSIDERING THIS VARIANCE ARE THAT I'M

20   NOT CONFIDENT THE GUIDELINES RANGE -- THE GUIDELINES RANGE FOR

21   THIS ACTUALLY SUFFICIENTLY TAKE INTO ACCOUNT

22   MS. TORIBIO-AVINA'S PERSONAL HISTORY AND CHARACTERISTICS.

23        SPECIFICALLY, MS. TORIBIO-AVINA CAME TO THE UNITED STATES

24   AS A CHILD, AND ALTHOUGH SHE ATTENDED HIGH SCHOOL HERE, SHE

25   LEFT WITHOUT GRADUATING SO THAT SHE COULD BEGIN WORKING TO HELP

1    SUPPORT HER FAMILY.  AND SHE HAS, IN FACT, A LONG HISTORY OF

2    EMPLOYMENT SINCE LEAVING HIGH SCHOOL.

3        I AM MINDFUL OF THE FACT THAT SHE HAS THREE CHILDREN WHOM

4    SHE'S RAISING WITH A PARTNER IN A STABLE HOUSEHOLD.  SHE HAS

5    DONE WELL ON PRETRIAL SUPERVISION.  SO FAR, THE COURT IS AWARE

6    OF NO VIOLATIONS OF HER PRETRIAL SUPERVISED RELEASE.

7        AND APART FROM THIS OFFENSE, WHICH IS INDEED A SERIOUS

8    OFFENSE, SHE HAS OTHERWISE HAD EXEMPLARY CONDUCT IN THE

9    COMMUNITY IN THESE CIRCUMSTANCES.  I FEEL A TERM OF PROBATION

10   WITHOUT ANY CONFINEMENT IS SUFFICIENT AND NOT GREATER THAN

11   NECESSARY TO SATISFY THE PURPOSES OF THE SENTENCING STATUTE.

12       HOWEVER, I AM CONSIDERING ALSO REQUIRING FROM

13   MS. TORIBIO-AVINA PERFORM 50 HOURS OF COMMUNITY SERVICE AS

14   PROPOSED BY THE GOVERNMENT, BOTH BECAUSE IT SERVES AS AN

15   ADDITIONAL LAYER OF PUNISHMENT, ACKNOWLEDGING THE SERIOUSNESS

16   OF HER CRIME, AND ALSO BECAUSE IT IS APPROPRIATE REHABILITATION

17   AND SERVES WHAT I FEEL IS AN IMPORTANT INTEREST OF REQUIRING

18   MS. TORIBIO-AVINA TO GIVE BACK TO THE COMMUNITY WHICH HAS BEEN

19   HARMED BY HER CONDUCT.

20       IN ADDITION, I AM ALSO CONSIDERING THE RECOMMENDATION BY

21   THE PROBATION DEPARTMENT OF WAIVING THE REQUIREMENT FOR

22   MS. TORIBIO-AVINA TO PAY A FINE IN VIEW OF HER FINANCIAL

23   CONDITION, WHICH I AM INFORMED HAS DETERIORATED DURING THE

24   PANDEMIC, AS SHE'S BEEN UNABLE TO WORK.

25       AND I AM ALSO CONSIDERING WAIVING THE MANDATORY DRUG

1       TESTING CONDITION THAT IS USUALLY IMPOSED, AS THERE IS NO

2       EVIDENCE THAT MS. TORIBIO-AVINA HAS A SUBSTANCE ABUSE PROBLEM.

3              DOES EITHER PARTY WISH TO COMMENT ON OR OBJECT TO THE

4       PROPOSED VARIANCES THAT THE COURT HAS JUST DESCRIBED,

5       MS. HARRIS?

6              MS. HARRIS:  NO, YOUR HONOR.

7              THE COURT:  MR. MUNOZ?

8              MR. MUNOZ:  NO, YOUR HONOR.

9              THE COURT:  I DO HAVE A FEW QUESTIONS ABOUT THE

10      FORFEITURE ISSUE.

11             IS THERE ANY PROPERTY TO FORFEIT OTHER THAN THE DRIVER'S

12      LICENSE, BIRTH CERTIFICATE AND PASSPORT IN THE NAME OF Y.P.,

13      AND ANY OTHER DOCUMENTS THAT MS. TORIBIO-AVINA HAS CREATED OR

14      ATTAINED IN THE NAME OF Y.P.  OR USING Y.P.'S IDENTITY?

15             IN OTHER WORDS, I'M ASKING IS THERE ANY OTHER PROPERTY

16      THAT WAS USED IN THE COMMISSION OF THE OFFENSE OR THAT IS

17      DERIVED FROM THE OFFENSE THAT WOULD BE SUBJECT TO FORFEITURE

18      UNDER THE STATUTE, MS. HARRIS?

19             MS. HARRIS:  YOUR HONOR, WE HAVE -- WHAT WE'VE

20      IDENTIFIED IN THE PLEA IS THE PROPERTY USED TO COMMIT THE

21      OFFENSE THAT WE ARE AWARE OF THUS FAR.

22             TO THE EXTENT THAT THE GOVERNMENT LATER BECOMES AWARE THAT

23      THERE'S ANY PROCEEDS ASSOCIATED WITH THIS OR THAT THE VICTIM

24      HAS SUFFERED ANY FRAUD, WE MAY SEEK FORFEITURE OF THOSE ASSETS

25      AT A LATER TIME, CONSISTENT WITH THE REPRESENTATIONS MADE IN

1     THE PLEA.

2         BUT AS FOR RIGHT NOW, IT IS WHAT WE'VE LISTED IN THE PLEA

3     AGREEMENT, AND SPECIFICALLY THE CATEGORIES OF THINGS THAT WE

4     HAVE LISTED IN THE PLEA AGREEMENT UNDER PARAGRAPH 13(F), ARE

5     THE THINGS THAT THE GOVERNMENT IS SEEKING ACCESS TO.

6         AND I WILL NOTE THAT WE DO NOT HAVE EXACT ACCOUNTING OF

7     ALL OF THOSE THINGS, THE CATEGORIES OF THINGS THAT WE'VE LISTED

8     IN PARAGRAPH 13(F) OF THE PLEA, THAT'S WHY WE DESCRIBED THEM AS

9     BEST WE COULD.

10        TO THE EXTENT THEY EXIST, ANY CREDIT CARDS, DEBIT CARDS,

11    HEALTH INSURANCE CARDS, ACCESS DEVICES, THAT TYPE OF STUFF, WE

12    WOULD ASK THOSE ITEMS BE COLLECTED BY THE DEFENDANT AND

13    FORFEITED TO THE GOVERNMENT.

14            THE COURT:  ALL RIGHT.  THANK YOU.

15        AND JUST TO PUT A FINE POINT ON MY QUESTION, IN

16    PARAGRAPH 13-A AND B OF THE PLEA AGREEMENT, THERE IS A

17    REFERENCE OF CONVEYANCE TO ANY VEHICLE OR ANY PROPERTY OR ANY

18    PROPERTY, REAL OR PERSONAL, THAT IS DERIVED FROM OR TRACEABLE

19    TO THE PROCEEDS.  PROBATION'S RECOMMENDATION DOES NOT INCLUDE

20    SPECIFICALLY FORFEITURE OF THOSE THINGS DESCRIBED IN 13-A AND

21    B.

22        AND SO MY QUESTION IS, DOES THE GOVERNMENT WISH THAT THE

23    COURT SENTENCE MS. TORIBIO TO INCLUDE SPECIFICALLY THE MATERIAL

24    DESCRIBED IN 13-A AND B OF THE PLEA AGREEMENT?

25            MS. HARRIS:  YES, YOUR HONOR, BECAUSE THOSE

1    REQUIREMENTS ARE PURSUANT TO THE STATUTE.  IT LITERALLY TRACKS

2    THE LANGUAGE OF THE STATUTE.

3            THE COURT:  MR. MUNOZ, DO YOU WANT TO BE HEARD ON

4    THAT QUESTION OF FORFEITURE?

5            MR. MUNOZ:  NO, YOUR HONOR.

6            THE COURT:  AND I UNDERSTAND THERE IS, AT THIS TIME,

7    NO LOSS THAT WARRANTS RESTITUTION TO Y.P.

8            MS. HARRIS:  YES, YOUR HONOR.

9         Y.P. HAS NOT IDENTIFIED TO US ANY SPECIFIC LOSS ASSOCIATED

10   WITH THIS CONDUCT THAT SHE WOULD SUBMIT AS A RESTITUTION CLAIM

11   AT THIS TIME.

12           THE COURT:  ALL RIGHT.

13        WITH RESPECT TO THE PARTY'S SPECIAL CONDITION AUTHORIZING

14   SUSPICIONLESS SEARCH OF MS. TORIBIO-AVINA AND HER RESIDENCE,

15   WHICH IS RECITED IN THE PLEA AGREEMENT, I WOULD LIKE TO BETTER

16   UNDERSTAND WHAT IS THE JUSTIFICATION FOR THAT SPECIAL

17   CONDITION, MS. HARRIS?

18           MS. HARRIS:  YOUR HONOR, THIS IS A STANDARD

19   CONDITION, AND PRETTY MUCH EVERY PLEA THAT OUR DISTRICT HAS,

20   AND THE BASIS FOR IT, IS TO ENSURE THAT THE DEFENDANT IS NOT

21   ENGAGED IN FURTHER CRIMINAL CONDUCT.

22        AS THE COURT MAY BE AWARE, IDENTITY THEFT, AND FRAUD IN

23   PARTICULAR, IS A SOMEWHAT INSIDIOUS OFFENSE BECAUSE THE PERSON

24   CAN, AT A LATER TIME AFTER THEY HAVE TURNED OVER ANY ITEMS THAT

25   WERE FRAUDULENTLY OBTAINED FROM THE USE OF SOMEONE'S

1    IDENTIFYING INFORMATION, OBTAIN MORE.

2        THE PURPOSE OF THIS IS TO MAKE CERTAIN THAT, SHOULD WE

3    BECOME AWARE OR SHOULD SHE BE STOPPED AND INDEED HAS ADDITIONAL

4    EVIDENCE OF IDENTITY FRAUD OR OTHER CRIME, THAT THE GOVERNMENT

5    CAN QUICKLY ACT ON IT AND LOCATE THOSE THINGS.

6        IT'S UNFORTUNATELY, IN MY EXPERIENCE, A DIFFICULT CRIME TO

7    DETER.  AND USUALLY, THE DEFENDANTS THAT I'VE HAD WHO HAVE BEEN

8    CONVICTED OF THIS AND SIMILAR CRIMES, ARE OFTEN FOUND AFTER THE

9    FACT WITH ADDITIONAL EVIDENCE OF IDENTITY FRAUD, THAT SORT OF

10   THING, THAT THEY CAN THEN MONETIZE THROUGH FRAUD.

11           THE COURT:  ALL RIGHT.  THANK YOU.

12       MR. MUNOZ, ANYTHING WITH RESPECT TO THE JUSTIFICATION OF

13   SUSPICIONLESS SEARCH?

14           MR. MUNOZ:  NO, YOUR HONOR.

15           THE COURT:  OKAY.

16       THE CONDITIONS OF SUPERVISION, OR IN THIS CASE PROBATION,

17    INCLUDE MANDATORY STANDARD AND SPECIAL CONDITIONS.

18       AND I WANT TO BE CLEAR ABOUT WHAT PROBATION AND THE

19    PARTIES ARE RECOMMENDING TO THE COURT.  AND WHAT I'M REFERRING

20    TO SPECIFICALLY IS SECTION 5(D)1.3, WHICH AS I DESCRIBED, HAS

21    DIFFERENT SECTIONS, MANDATORY CONDITIONS, STANDARD CONDITIONS

22    AND THEN SPECIAL CONDITIONS, WHICH ARE THE ONES THAT YOU ALL

23    HAVE INCLUDED IN THE PLEA AGREEMENT.

24       MOST OFTEN, I FIND THAT THERE'S SOME CONFUSION ABOUT WHICH

25    STANDARD CONDITIONS WILL APPLY AND WHETHER THERE ARE ANY

1    OBJECTIONS TO THE COURT'S IMPOSITION OF STANDARD CONDITIONS.

2          WE HAVE ALREADY TALKED ABOUT THE MANDATORY CONDITIONS, AND

3    THE RECOMMENDATION ABOUT DRUG TESTING DO NOT APPLY.  BUT I

4    WOULD LIKE TO ASK ABOUT THE STANDARD CONDITIONS.  DO THE

5    PARTIES AGREE THAT THE COURT SHOULD IMPOSE ALL 13 OF THESE

6    STANDARD CONDITIONS AS TERMS OF PROBATION?

7               MS. HARRIS:  YES, YOUR HONOR.

8               THE COURT:  MR. MUNOZ?

9               MR. MUNOZ:  I WILL SUBMIT ON THAT, YOUR HONOR.

10              THE COURT:  OFFICER BUTLER, DO YOU HAVE ANY CONCERNS

11    OR RECOGNITIONS FOR THE COURT REGARDING THE STANDARD CONDITIONS

12    IN SECTION 5(D)1.3?  DO YOU AGREE THAT ALL SHOULD APPLY?

13              PROBATION OFFICER:  YES, YOUR HONOR.

14              THE COURT:  OKAY.  THANK YOU FOR THAT CLARIFICATION.

15          ALL RIGHT.  LET ME TURN TO ASKING THE PARTIES IF THEY HAVE

16    ANY FINAL STATEMENTS.  AND MS. TORIBIO-AVINA OF COURSE HAS THE

17    RIGHT TO MAKE A STATEMENT TO THE COURT AND TO PRESENT ANY

18    INFORMATION TO MITIGATE HER SENTENCE.

19          DOES MS. TORIBIO-AVINA WISH TO MAKE A STATEMENT?

20              THE DEFENDANT:  NO, I'M FINE.  THANK YOU.

21              THE COURT:  MR. MUNOZ?

22              MR. MUNOZ:  NO.  I WAS GOING TO SAY I DON'T BELIEVE

23    SHE WISHES TO --

24              THE COURT:  I'M SORRY, I CAN'T HEAR YOU, MR. MUNOZ.

25              MR. MUNOZ:  I'M SORRY.

```
 1          I WAS GOING TO SAY I DIDN'T BELIEVE SHE WISHED TO MAKE A
 2     STATEMENT.
 3              THE COURT:  ALL RIGHT.  THANK YOU.
 4          ALL RIGHT.  LET ME ASK YOU, DO ON YOU WISH TO MAKE A
 5     STATEMENT OR ADD ANYTHING AT ALL ON BEHALF OF
 6     MS. TORIBIO-AVINA?
 7              MR. MUNOZ:  NOT AT THIS POINT, NO.
 8              THE COURT:  THIS WOULD BE THE POINT TO DO IT.  SO IF
 9     YOU WOULD LIKE TO, DO IT NOW.
10              MR. MUNOZ:  NO.  I'VE SAID WHAT I'VE SAID ALREADY,
11     YOUR HONOR.  THANKS SO MUCH.
12              THE COURT:  MS. HARRIS, DOES THE GOVERNMENT WISH TO
13     MAKE A FINAL STATEMENT?
14              MS. HARRIS:  NO.  THANK YOU, YOUR HONOR.
15              THE COURT:  OKAY.
16          ALL RIGHT.  SO HAVING CONSIDERED THE GUIDELINES AND
17     POTENTIAL DEPARTURES AND THE SECTION 3553(A) FACTORS, I DO
18     CONCLUDE THAT A SENTENCE THAT IS SOMEWHAT OUTSIDE THE ADVISORY
19     GUIDELINE RANGE IS WARRANTED HERE.
20          I SENTENCE MS. TORIBIO-AVINA TO A TERM OF PROBATION OF
21     THREE YEARS, WHICH DOES REPRESENT A SLIGHT VARIANCE.  MY
22     REASONS FOR DOING SO ARE AS I STATED PREVIOUSLY, THAT I DO NOT
23     BELIEVE THE GUIDELINES RANGE ADEQUATELY TAKES INTO ACCOUNT HER
24     PERSONAL HISTORY AND CHARACTERISTICS.
25              I DO ALSO SENTENCE MS. TORIBIO-AVINA TO PERFORM 50 HOURS
```

1    OF COMMUNITY SERVICE.  AND THIS ASPECT OF THE SENTENCE IS

2    INTENDED TO SERVE THE INTEREST OF PUNISHMENT, DETERRENCE AND

3    REHABILITATION, AS IT WILL REQUIRE, AS I SAID BEFORE, THAT

4    MS. TORIBIO-AVINA GIVE BACK TO THE COMMUNITY, WHICH HAS BEEN

5    HARMED BY HER CONDUCT HERE.

6         WHILE ON PROBATION, MS. TORIBIO-AVINA SHALL NOT COMMIT

7    ANOTHER FEDERAL, STATE OR LOCAL CRIME, AND SHALL COMPLY WITH

8    ALL OF THE STANDARD CONDITIONS THAT HAVE BEEN ADOPTED BY THIS

9    COURT AND THIS DISTRICT, EXCEPT FOR THE MANDATORY DRUG TESTING

10   PROVISION WHICH SHALL BE SUSPENDED.

11        DO THE PARTIES WISH ME TO READ OUT ALL OF THE CONDITIONS?

12             MS. HARRIS:  IT'S TYPICAL THAT THE JUDGES DO.

13             THE COURT:  I WILL DO THAT THEN.

14        SO LET ME READ OUT ALL OF THE MANDATORY CONDITIONS FIRST.

15        THE DEFENDANT SHALL NOT COMMIT ANOTHER FEDERAL, STATE OR

16   LOCAL CRIME.  THE DEFENDANT SHALL NOT UNLAWFULLY POSSESS A

17   CONTROLLED SUBSTANCE.  THE DEFENDANT SHALL REFRAIN FROM ANY

18   UNLAWFUL USE OF A CONTROLLED SUBSTANCE.

19        I AM WAIVING THE FINE, SO THAT CONDITION WILL NOT APPLY.

20   AND THERE IS NO RESTITUTION, SO THAT PART WON'T APPLY.

21        THE MANDATORY SPECIAL ASSESSMENT OF $25 MUST BE PAID

22   IMMEDIATELY UPON SENTENCING.

23        IS MS. TORIBIO-AVINA REQUIRED TO SUBMIT A DNA SAMPLE?

24      I DON'T THINK SO.

25             MS. HARRIS:  NO, YOUR HONOR.

1          MR. MUNOZ:  NO, YOUR HONOR.

2          THE COURT:  OKAY.  THANK YOU.  SO THAT ONE DOES NOT

3     APPLY.

4          WITH RESPECT TO THE STANDARD CONDITIONS THAT ALSO APPLY,

5     THEY ARE AS FOLLOWS:

6          THE DEFENDANT SHALL REPORT TO THE PROBATION OFFICE IN THE

7     FEDERAL JUDICIAL DISTRICT WHERE SHE IS AUTHORIZED TO RESIDE

8     WITHIN 72 HOURS.

9          SORRY, THIS IS NOT FROM RELEASE OF IMPRISONMENT.  LET ME

10    MODIFY THIS.

11         THE DEFENDANT SHALL REPORT TO THE PROBATION OFFICE IN THIS

12    JUDICIAL DISTRICT, UNLESS THE PROBATION OFFICER INSTRUCTS THAT

13    THE DEFENDANT REPORT TO A DIFFERENT PROBATION OFFICE WITHIN A

14    DIFFERENT TIME FRAME.

15         AFTER INITIALLY REPORTING TO THE PROBATION OFFICE, THE

16    DEFENDANT WILL RECEIVE INSTRUCTIONS FROM THE COURT OR THE

17    PROBATION OFFICER ABOUT HOW OR WHEN TO REPORT TO THE PROBATION

18    OFFICER.  AND THE DEFENDANT SHALL REPORT TO THE PROBATION

19    OFFICER AS INSTRUCTED.

20         THE DEFENDANT SHALL NOT KNOWINGLY LEAVE THE OFFICIAL

21    JUDICIAL DISTRICT WHERE SHE IS AUTHORIZED TO RESIDE WITHOUT

22    FIRST GETTING PERMISSION FROM THE COURT OR THE PROBATION

23    OFFICER.

24         THE DEFENDANT SHALL ANSWER TRUTHFULLY THE QUESTIONS ASKED

25    BY THE PROBATION OFFICER.

1       THE DEFENDANT SHALL LIVE AT A PLACE APPROVED BY THE

2  PROBATION OFFICER.

3       IF THE DEFENDANT PLANS TO CHANGE WHERE SHE LIVES OR

4  ANYTHING ABOUT HER LIVING ARRANGEMENTS, SUCH AS THE PEOPLE WITH

5  WHOM SHE LIVES, THE DEFENDANT SHALL NOTIFY THE PROBATION

6  OFFICER AT LEAST TEN DAYS BEFORE THE CHANGE.

7       IF NOTIFYING THE PROBATION OFFICER AT LEAST TEN DAYS IN

8  ADVANCE IS NOT POSSIBLE DUE TO UNANTICIPATED CIRCUMSTANCES, THE

9  DEFENDANT SHALL NOTIFY THE PROBATION OFFICER WITHIN 72 HOURS OF

10  BECOMING AWARE OF THE CHANGE OR EXPECTED CHANGE.

11       THE DEFENDANT SHALL ALLOW THE PROBATION OFFICER TO VISIT

12  THE DEFENDANT AT ANY TIME AT HER HOME OR ELSEWHERE, AND THE

13  DEFENDANT SHALL PERMIT THE PROBATION OFFICER TO TAKE ANY ITEMS

14  PROHIBITED BY THE CONDITIONS OF DEFENDANT'S SUPERVISION THAT

15  ARE OBSERVED IN PLAIN VIEW.

16       THE DEFENDANT SHALL WORK FULL TIME, AT LEAST 30 HOURS PER

17  WEEK, AT A LAWFUL TYPE OF EMPLOYMENT, UNLESS THE PROBATION

18  OFFICER EXCUSES THE DEFENDANT FROM DOING SO.

19       IF THE DEFENDANT DOES NOT HAVE FULL-TIME EMPLOYMENT, SHE

20  SHALL TRY TO FIND FULL-TIME EMPLOYMENT UNLESS THE PROBATION

21  OFFICER EXCUSES THE DEFENDANT FROM DOING SO.

22       IF THE DEFENDANT PLANS TO CHANGE WHERE THE DEFENDANT

23  WORKS, OR ANYTHING ABOUT HER WORK, SUCH AS THE POSITION OR THE

24  JOB RESPONSIBILITIES, THE DEFENDANT SHALL NOTIFY THE PROBATION

25  OFFICER AT LEAST TEN DAYS BEFORE THE CHANGE.

1    IF NOTICE TO THE PROBATION OFFICER IN ADVANCE IS NOT

2    POSSIBLE DUE TO UNANTICIPATED CIRCUMSTANCES, THE DEFENDANT

3    SHALL NOTIFY THE PROBATION OFFICER WITHIN 72 HOURS OF BECOMING

4    AWARE OF A CHANGE OR EXPECTED CHANGE.

5    THE DEFENDANT SHALL NOT COMMUNICATE OR INTERACT WITH

6    SOMEONE THE DEFENDANT KNOWS IS ENGAGED IN CRIMINAL ACTIVITY.

7    IF THE DEFENDANT KNOWS SOMEONE HAS BEEN CONVICTED OF A

8    FELONY, THE DEFENDANT SHALL NOT KNOWINGLY COMMUNICATE OR

9    INTERACT WITH THAT PERSON WITHOUT FIRST GETTING PERMISSION OF

10   THE PROBATION OFFICER.

11   IF THE DEFENDANT IS ARRESTED OR QUESTIONED BY A LAW

12   ENFORCEMENT, THE DEFENDANT SHALL NOTIFY THE PROBATION OFFICER

13   WITHIN 72 HOURS.

14   DEFENDANT SHALL NOT OWN OR POSSESS ANY FIREARMS,

15   AMMUNITION, DESTRUCTIVE DEVICES OR OTHER DANGEROUS WEAPONS.

16   THAT IS, ANYTHING THAT WAS DESIGNED OR WAS MODIFIED FOR THE

17   SPECIFIC PURPOSE OF CAUSING BODILY INJURY OR DEATH TO ANOTHER

18   PERSON, SUCH AS A NUNCHUCKS OR TASERS.

19   THE DEFENDANT SHALL NOT ACT OR MAKE ANY AGREEMENT WITH A

20   LAW ENFORCEMENT AGENCY TO ACT AS A CONFIDENTIAL HUMAN SOURCE OR

21   INFORMANT WITHOUT FIRST GETTING THE PERMISSION OF THE COURT.

22   IF THE PROBATION OFFICER DETERMINES THAT THE DEFENDANT

23   POSES A RISK TO ANOTHER PERSON, INCLUDING AN ORGANIZATION, THE

24   PROBATION OFFICER MAY REQUIRE THE DEFENDANT TO NOTIFY THE

25   PROBATION OFFICER ABOUT THE RISK AND THE DEFENDANT SHALL COMPLY

1    WITH THAT INSTRUCTION.  THE PROBATION OFFICER MAY CONTACT THE

2    PERSON AND CONFIRM THAT THE DEFENDANT HAS NOTIFIED THE PERSON

3    ABOUT THE RISK.

4         THE DEFENDANT SHALL FOLLOW THE INSTRUCTIONS OF THE

5    PROBATION OFFICER RELATED TO THE CONDITIONS OF SUPERVISION.

6         IN ADDITION, MS. TORIBIO SHALL COMPLY WITH THE FOLLOWING

7    ADDITIONAL SPECIAL CONDITIONS:

8         SHE MUST COMPLY WITH THE RULES AND REGULATIONS OF THE U.S.

9    IMMIGRATION AND CUSTOMS ENFORCEMENT, AND IF DEPORTED, NOT

10   REENTER THE UNITED STATES WITHOUT THE EXPRESS CONSENT OF THE

11   SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY.

12        UPON ANY REENTRY INTO THE UNITED STATES DURING THE PERIOD

13   OF COURT ORDERED PROBATION, YOU MUST REPORT TO THE NEAREST U.S.

14   PROBATION OFFICER WITHIN 72 HOURS.

15        THE JUSTIFICATION FOR THIS CONDITION IS THAT IT SERVES THE

16   STATUTORY SENTENCING PURPOSE OF PUBLIC PROTECTION.

17        IN ADDITION, MS. TORIBIO MUST NOT POSSESS ANY FALSE

18   IDENTIFICATION, AND MUST PROVIDE HER TRUE IDENTITY AT ALL

19   TIMES.  THIS SERVES THE SAME INTEREST AND ALSO PROMOTES

20   REHABILITATION.

21        FURTHER, MS. TORIBIO MUST SUBMIT HER PERSON, RESIDENCE,

22   OFFICE, VEHICLE, ELECTRONIC DEVICES AND THEIR DATA, INCLUDING

23   CELL PHONES, COMPUTERS AND ELECTRONIC STORAGE MEDIA, OR ANY

24   PROPERTY UNDER HER CONTROL TO A SEARCH.

25        SUCH A SEARCH SHALL BE CONDUCTED BY A UNITED STATES

1    PROBATION OFFICER, OR ANY FEDERAL, STATE OR LOCAL LAW

2    ENFORCEMENT OFFICER AT ANY TIME, WITH OR WITHOUT SUSPICION.

3    FAILURE TO SUBMIT TO SUCH A SEARCH MAY BE GROUNDS FOR

4    REVOCATION OF THE PROBATION.

5         MS. TORIBIO-AVINA MUST WARN ANY RESIDENCE THAT THE

6    PREMISES MUST BE SUBJECT TO SEARCHES.  THIS IS THE TERM OF THE

7    PARTY'S AGREEMENT, AND ALSO BECAUSE IT DOES SERVE, AS THE

8    GOVERNMENT EXPLAINED, THE PURPOSES OF PUBLIC PROTECTION.

9         THE COURT WILL IMPOSE THAT CONDITION.

10        IN ADDITION, MS. TORIBIO MUST IMMEDIATELY CEASE USE OF

11   VICTIM'S Y.P.'S DATE OF BIRTH, SOCIAL SECURITY NUMBER, AND ANY

12   OTHER PERSONALLY IDENTIFYING INFORMATION ASSOCIATED WITH Y.P.

13   OR DERIVED FROM Y.P.'S PERSONALLY IDENTIFYING INFORMATION.

14        SHE MUST NOT USE Y.P.'S NAME, DATE OF BIRTH, SOCIAL

15   SECURITY NUMBER AND ANY OTHER PERSONALLY IDENTIFIABLE

16   INFORMATION ASSOCIATED WITH Y.P. IN ANY WAY OR FOR ANY PURPOSE,

17   OTHER THAN TO CLOSE OR TRANSFER ACCOUNTS, SUBSCRIPTIONS,

18   RESIDENCES, REGISTRATIONS, OR SERVICES FRAUDULENTLY OPENED IN

19   Y.P.'S NAME.  THIS CONDITION ALSO SERVES THE INTEREST OF PUBLIC

20   PROTECTION AND REHABILITATION.

21        FINALLY, MS. TORIBIO-AVINA MUST CLOSE OR CANCEL ALL

22   ACCOUNTS, SUBSCRIPTIONS, LICENSES, REGISTRATIONS, OR SERVICES

23   OF ANY KIND ESTABLISHED UNDER THE NAME, DATE OF BIRTH OR SOCIAL

24   NUMBER OF Y.P. OR A TRANSFER OF SUCH ACCOUNTS TO REFLECT HER

25   TRUE NAME AND IDENTIFYING INFORMATION.  IF SUCH ACCOUNTS,

1    SUBSCRIPTIONS, LICENSES, REGISTRATIONS OR SERVICES CANNOT

2    LAWFULLY EXIST UNDER HER TRUE NAME AND IDENTIFYING INFORMATION,

3    SHE MUST CLOSE OR CANCEL THEM ENTIRELY OR LAWFULLY TRANSFER

4    THEM TO ANOTHER PERSON.

5         SHE MUST PROVIDE A NOTIFIED CERTIFICATION IN WRITING --

6    NOTARIZED CERTIFICATION IN WRITING THAT THIS CONDITION HAS BEEN

7    MET WITHIN SIX MONTHS OF THIS SENTENCING DATE.

8         THIS CONDITION IS ALSO PART OF THE PARTIES' PLEA AGREEMENT

9    AND SERVES FOR PUBLIC PROTECTION AND REHABILITATION.

10        I BELIEVE I'VE ALREADY INDICATED THE SENTENCE, INCLUDING

11   PAYMENT FOR THE SPECIAL ASSESSMENT OF $25, AND THAT WILL BE DUE

12   IMMEDIATELY UPON SENTENCING.

13        WITH RESPECT TO FORFEITURE, THE SENTENCE ALSO INCLUDES THE

14   FOLLOWING:

15        I WILL ORDER AS PART OF HER SENTENCE, THAT

16   MS. TORIBIO-AVINA FORFEIT HER INTEREST IN THE FOLLOWING

17   PROPERTY:

18        ANY CONVEYANCE, INCLUDING ANY VESSEL, VEHICLE OR AIRCRAFT

19   USED IN THE COMMISSION OF THE OFFENSE.  ANY PROPERTY, REAL OR

20   PERSONAL, THAT CONSTITUTES OR IS DERIVED FROM OR IS TRACEABLE

21   FROM THE PROCEEDS THAT THE DEFENDANT OBTAINED DIRECTLY OR

22   INDIRECTLY FROM THE COMMISSION OF THE OFFENSE OR THAT WAS USED

23   TO FACILITATE OR WAS INTENDED TO BE USED TO FACILITATE THE

24   COMMISSION OF THE OFFENSE.

25        SHE MUST ALSO FORFEIT HER CALIFORNIA DRIVER'S LICENSE

1    ENDING IN THE NUMBER 651, BEARING THE NAME AND BIRTH DATE OF

2    Y.P., THE BIRTH CERTIFICATE ISSUED BY THE COMMONWEALTH OF

3    PUERTO RICO IN THE NAME OF Y.P., THE U.S. PASSPORT ENDING IN

4    NUMBER 282, BEARING THE NAME OF Y.P., AND ALL BIRTH

5    CERTIFICATES, DEATH CERTIFICATES, MARRIAGE CERTIFICATES,

6    PASSPORTS, VISAS, SOCIAL SECURITY CARDS, CREDIT CARTS, DEBIT

7    CARDS, HEALTH INSURANCE CARDS, ACCESS DEVICES, AND IDENTIFY

8    DOCUMENTS OF ANY KIND BEARING THE NAME, DATE OF BIRTH, OR

9    SOCIAL SECURITY NUMBER OF Y.P., OR ISSUED DUE TO HER USE OF THE

10   NAME, DATE OF BIRTH, OR SOCIAL SECURITY NUMBER OF Y.P.

11           MS. HARRIS:  YOUR HONOR, WE WOULD ASK THE DATE OF THE

12   FORFEITURE, TO THE EXTENT THE ITEMS ARE NOT ALREADY IN THE

13   CUSTODY OF THE GOVERNMENT, THAT IT BE ON THE DATE THAT SHE

14   PROVIDES HER NOTARIZED CERTIFICATION, SO THAT'S APPROXIMATELY

15   SIX MONTHS AFTER TODAY.

16           THE COURT:  OKAY.  I WILL ORDER THAT THOSE ITEMS BE

17   FORFEITED, IF THEY ARE STILL IN MS. TORIBIO-AVINA'S POSSESSION,

18   SIX MONTHS FROM THE DATE OF SENTENCING.

19       ALL RIGHT.  I BELIEVE I HAVE ADDRESSED ALL OF THE ITEMS

20   THAT ARE PART OF MS. TORIBIO-AVINA'S SENTENCE.

21       MS. HARRIS, DO YOU AGREE?  HAVE I MISSED SOMETHING?

22           MS. HARRIS:  NO, YOUR HONOR.

23           THE COURT:  MR. MUNOZ, HAVE I MISSED SOMETHING OR

24   MISSTATED SOMETHING?

25           MR. MUNOZ:  NO.

1          THANK YOU, YOUR HONOR.

2              THE COURT:  ALL RIGHT.

3          I DON'T KNOW IF I SAID IT ALREADY, BUT IF I HAVEN'T, I AM

4     WAIVING THE FINE THAT OTHERWISE WOULD BE REQUIRED OF

5     MS. TORIBIO-AVINA'S PART OF THE GUIDELINES, AND I AM ALSO

6     WAIVING THE MANDATORY DRUG TESTING CONDITION.

7          OTHERWISE, THAT IS THE SENTENCE THAT WILL BE IMPOSED, WHAT

8     I HAVE JUST RECITED.

9          MS. TORIBIO-AVINA, I'M GOING TO NOTIFY YOU OF YOUR RIGHTS

10    OF APPEAL.

11         YOU CAN APPEAL YOUR CONVICTION IF YOU BELIEVE THAT YOUR

12    GUILTY PLEA WAS SOMEHOW UNLAWFUL OR INVOLUNTARY OR IF THERE WAS

13    SOME OTHER FUNDAMENTAL DEFECT IN THE PROCEEDINGS THAT WAS NOT

14    WAIVED BY YOUR GUILTY PLEA.

15         UNDER SOME CIRCUMSTANCES, A DEFENDANT ALSO HAS THE RIGHT

16    TO APPEAL THE SENTENCE THAT'S IMPOSED; HOWEVER, A DEFENDANT MAY

17    WAIVE THAT RIGHT AS PART OF THE PLEA AGREEMENT, AND YOU HAVE IN

18    FACT ENTERED A PLEA AGREEMENT, WHICH WAIVES SOME OF OR ALL OF

19    YOUR RIGHTS TO APPEAL THE SENTENCE ITSELF.

20         SUCH WAIVERS ARE GENERALLY ENFORCEABLE, BUT IF YOU BELIEVE

21    THE WAIVER ITSELF IS NOT VALID, YOU CAN PRESENT THAT THEORY TO

22    THE APPELLATE COURT.

23         I DO WANT TO REMIND YOU, MS. TORIBIO-AVINA, THAT PURSUANT

24    TO PARAGRAPH 4 OF YOUR PLEA AGREEMENT, YOU HAVE AGREED TO GIVE

25    UP YOUR RIGHT TO APPEAL YOUR CONVICTION, INCLUDING

1   CONSTITUTIONAL CHALLENGES TO THE STATUTE OF CONVICTION.  YOU

2   HAVE ALSO AGREED TO GIVE UP YOUR RIGHT TO APPEAL THE JUDGMENT

3   OF THE COURT AND ALL OF ITS ORDERS, AND YOU HAVE ALSO AGREED TO

4   GIVE UP YOUR RIGHT TO APPEAL ANY ASPECT OF YOUR SENTENCE,

5   EXCEPT FOR YOUR RIGHT TO CLAIM THAT THE SENTENCE VIOLATED THE

6   TERMS OF YOUR PLEA AGREEMENT, THE APPLICABLE LAW, OR THE

7   CONSTITUTION.

8        YOU DO RETAIN YOUR RIGHT TO CLAIM THAT YOU RECEIVED

9   INEFFECTIVE ASSISTANCE OF COUNSEL.

10        I DO WANT TO ADVISE YOU THAT ANY NOTICE OF APPEAL MUST BE

11   FILED WITHIN 14 DAYS OF ENTRY OF THE JUDGMENT OR AN ORDER BEING

12   APPEALED FROM OR WITHIN 14 DAYS OF THE FILING OF A NOTICE OF

13   APPEAL BY THE GOVERNMENT.

14        IF REQUESTED, THE CLERK WILL PREPARE AND FILE A NOTICE OF

15   APPEAL ON YOUR BEHALF.  IF YOU CANNOT AFFORD TO PAY THE COST OF

16   APPEAL, YOU HAVE THE RIGHT TO APPLY FOR LEAVE TO APPEAL IN

17   FORMA PAUPERIS, WHICH MEANS YOU CAN APPLY FOR THE COURT TO

18   WAIVE THE FILING FEE.  AND ON APPEAL, YOU CAN ALSO APPLY TO THE

19   COURT TO APPOINT COUNSEL TO REPRESENT YOU AT NO COST TO YOU.

20        LET ME ASK COUNSEL, ARE THERE ANY OTHER MATTERS TO RESOLVE

21   IN THIS CASE?

22             MS. HARRIS:  NO, YOUR HONOR.

23        I DID JUST WANT TO SAY THAT I WENT BACK AND LOOKED AT MY

24   CARES ACT GUIDE.  TO THE EXTENT THAT WE HAVE TO MAKE A FINDING

25   THAT THERE IS SPECIFIC REASONS IN THIS PARTICULAR CASE THAT THE

1    SENTENCING CANNOT BE FURTHER DELAYED WITHOUT SERIOUS HARM TO

2    THE INTEREST OF JUSTICE, THE GOVERNMENT SUBMITS THAT IT CANNOT

3    BE FURTHER DELAYED ON THE BASIS OF THE HARM TO THE VICTIM AND

4    ALSO HARM TO THE DEFENDANT, IN TERMS OF NOT HAVING THIS MATTER

5    RESOLVED EXPEDITIOUSLY, AND THAT IT WOULD BE IN THE INTEREST OF

6    JUSTICE TO PROCEED WITH SENTENCING TODAY, AS WE HAVE.

7         THANK YOU.

8              THE COURT:  ALL RIGHT.

9         AND MR. MUNOZ, DO KNOW CONCUR IN MS. HARRIS'S RECITATION?

10             MR. MUNOZ:  I DO.

11             THE COURT:  OKAY.  I WILL SO FIND THAT SENTENCING

12   CANNOT BE DELAYED IN THE INTEREST OF JUSTICE FOR THE REASONS

13   THAT THE GOVERNMENT HAS STATED.

14        AND THANK YOU VERY MUCH FOR REMINDING US OF THAT

15   REQUIREMENT.

16        ALL RIGHT.  AS MS. TORIBIO-AVINA IS OUT OF CUSTODY, I

17   WOULD LIKE TO JUST ASK, IS THERE ANY REASON -- WELL, WE SHOULD

18   JUST SET A DATE FOR MS. TORIBIO-AVINA TO REPORT TO BEGIN

19   SERVICE OF HER SENTENCE.

20        LET ME ASK OFFICER BUTLER WHEN AND HOW, FROM PROBATION'S

21   PERSPECTIVE, SHOULD MS. TORIBIO-AVINA REPORT TO BEGIN SERVICE

22   OF HER SENTENCE?  72 HOURS?

23             PROBATION OFFICER:  YES, THAT WOULD BE FINE.

24        AND SHE CAN ACTUALLY CALL THE PROBATION OFFICE.  SHE IS IN

25   THE EASTERN DISTRICT, SO SHE'S NOT IN THE NORTHERN DISTRICT OF

```
1        CALIFORNIA, SO SHE CAN REPORT TO THEM.

2              THE COURT:  ALL RIGHT.

3        I THINK IT WOULD BE VERY HELPFUL IF YOU COULD PROVIDE

4    SPECIFIC INFORMATION.  AND IF YOU COULD DO SO RIGHT NOW WHILE

5    WE ARE ALL HERE, SPECIFIC INFORMATION TO MS. TORIBIO-AVINA AND

6    HER LAWYER, TO WHOM THEY SHOULD CONTACT IN THE EASTERN DISTRICT

7    OF CALIFORNIA.

8              PROBATION OFFICER:  I WILL LOOK IT UP.

9        MODESTO.  THE NUMBER IS (209)574-9052.  AND SHE CAN SPEAK

10   WITH THE OFFICER THAT'S ON DUTY THAT DAY.

11             THE INTERPRETER:  LET ME CHECK WITH YOU.

12   (209)574-9052, CORRECT?

13             PROBATION OFFICER:  YES.

14             THE INTERPRETER:  OKAY.

15             THE DEFENDANT:  OKAY.

16             THE COURT:  THANK YOU.

17       AND OFFICER BUTLER, THAT IS THE CONTACT NUMBER FOR THE

18   PROBATION OFFICER IN THE EASTERN DISTRICT OF CALIFORNIA?

19             PROBATION OFFICER:  YES, YOUR HONOR.

20       I DID HAVE ONE QUESTION FOR YOU, YOUR HONOR.  WHEN WOULD

21   YOU LIKE MS. TORIBIO-AVINA TO COMPLETE HER COMMUNITY SERVICE

22   HOURS?

23             THE COURT:  YOU KNOW, THAT'S A GOOD QUESTION.

24       I WOULD LIKE TO UNDERSTAND, GIVEN THE CURRENT PUBLIC

25   HEALTH CRISIS, WHETHER THERE'S ANY PARTICULAR CONCERN ABOUT
```

1   THAT.  I DON'T KNOW WHETHER IT'S POSSIBLE OR WHAT FORM THE

2   COMMUNITY SERVICE WILL TAKE, SUCH THAT IT CAN BE DONE SAFELY,

3   THAT MIGHT IMPACT HOW LONG SHE HAS AND WHEN SHE CAN DO IT.

4        DO YOU HAVE ANY INSIGHT ON THAT FOR THE COURT?

5             PROBATION OFFICER:  UNFORTUNATELY, I DO NOT.

6        I'M NOT SURE HOW PEOPLE ARE CONDUCTING COMMUNITY SERVICE

7   DUE TO THE CURRENT HEALTH PANDEMIC.  MY SUGGESTION WOULD BE TO

8   GIVE HER THE FULL 36 MONTHS THAT SHE'S ON OUR SUPERVISION.

9             THE COURT:  MS. HARRIS, DO YOU HAVE ANY VIEWS ON THAT

10  POINT?

11            MS. HARRIS:  MY VIEW IS THAT IT WOULD BE FINE TO GIVE

12  THE DEFENDANT THE 36 MONTHS.

13       ALL I CAN SAY, IN TERMS OF HOW COMMUNITY SERVICE

14  ORGANIZATIONS ARE HANDLING COMMUNITY SERVICE, IS THAT THERE ARE

15  SEVERAL THAT ALL HAVE THEIR INDIVIDUAL GUIDELINES FOR HOW

16  PEOPLE MEET IN PERSON, UNDER CIRCUMSTANCES UNDER WHICH THEY CAN

17  MEET.

18       I KNOW THAT I AM PERSONALLY DOING COMMUNITY SERVICE FOR

19  THE RED CROSS.  AND, YOU KNOW, I OPERATE AS A DRIVER, I DELIVER

20  BLOOD PRODUCTS TO HOSPITALS WHENEVER I HAVE TIME.  SO THERE ARE

21  WAYS IN WHICH SHE COULD FULFILL THAT REQUIREMENT, EITHER

22  ORGANIZATIONALLY OR THROUGH SOME OTHER RELIGIOUS AFFILIATION OR

23  OTHER COUNTY-OPERATED INITIATIVE.  BUT IT VARIES IN TERMS OF

24  COUNTIES AND HOW THEY DO THEIR IN-PERSON SERVICE.  AND THERE

25  MAY ALSO BE OPPORTUNITIES FOR REMOTE SERVICE.

1    SO FOR EXAMPLE, SOME ORGANIZATIONS HAVE ONLINE THINGS THAT

2    PEOPLE CAN DO, THAT MAY BE AN OPTION FOR HER.

3    THE COURT:  ALL RIGHT.  THANK YOU.

4    MR. MUNOZ, ANY THOUGHTS ON THAT QUESTION OF HOW TO

5    ACCOMPLISH, AND DURING WHAT TIME FRAME, THE COMMUNITY SERVICE?

6    MR. MUNOZ:  I THINK GIVING HER THE 36 MONTHS IS A

7    GOOD WAY TO GO ABOUT THIS TO MAKE SURE THAT SHE COMPLETES IT.

8    THE COURT:  ALL RIGHT.

9    AS EVERYONE SEEMS TO BE IN AGREEMENT ON THE

10   RECOMMENDATION, I WILL PERMIT MS. TORIBIO-AVINA TO COMPLETE HER

11   COMMUNITY SERVICE WITHIN THE THREE YEARS OF HER PROBATION, BY

12   THE END OF THAT PROBATION.

13   IS THERE ANYTHING FURTHER FROM THE GOVERNMENT AT THIS

14   TIME?

15   MS. HARRIS:  NO, YOUR HONOR.

16   THANK YOU.

17   THE COURT:  OKAY.  ANYTHING FROM THE DEFENSE?

18   MR. MUNOZ:  NO, YOUR HONOR.

19   THANK YOU.

20   THE COURT:  OKAY.

21   MS. TORIBIO-AVINA, THE COURT WILL PREPARE A JUDGMENT WHICH

22   WILL BE ENTERED.  THERE IS ALSO -- THERE WILL BE A TRANSCRIPT

23   OF THESE PROCEEDINGS WHICH HAVE BEEN TRANSCRIBED BY A COURT

24   REPORTER AS WELL, AND THAT CAN BE MADE AVAILABLE TO YOU.

25   ALL RIGHT.  THANK YOU ALL VERY MUCH.  AND MY BEST WISHES

1       TO YOU, MS. TORIBIO-AVINA.

2                 MS. HARRIS:  GOOD LUCK, MA'AM.

3                 MR. MUNOZ:  THANK YOU.

4                 THE DEFENDANT:  THANK YOU VERY MUCH.

5                 THE COURT:  AND THANK YOU MS. ARCE AND OFFICER

6       BUTLER.

7            (THE PROCEEDINGS WERE CONCLUDED AT 2:32 P.M.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                      **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8           I, THE UNDERSIGNED OFFICIAL COURT

9     REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11    FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12    CERTIFY:

13           THAT THE FOREGOING TRANSCRIPT,

14    CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15    CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16    SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17    HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18    TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24    _____
      SUMMER A. FISHER, CSR, CRR
25    CERTIFICATE NUMBER 13185        DATED: 9/28/20